ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

AMIT DAGAR and
ATUL BHIWAPURKAR,

Defendants.

**SEALED INDICTMENT**

23 Cr.

**23 CRIM 319**

**COUNT ONE**
**(Conspiracy to Commit Securities Fraud)**

The Grand Jury charges:

1. In or about November 2021, AMIT DAGAR and ATUL BHIWAPURKAR, the defendants, and others known and unknown, participated in an insider trading scheme to reap illicit profits from options trading based on material non-public information ("MNPI") about the results of clinical trials of Paxlovid, a drug treatment for COVID-19. In furtherance of that scheme, DAGAR, in violation of duties of trust and confidence that he owed to his employer, Pfizer Inc. ("Pfizer"), obtained MNPI about the results of Pfizer's clinical trial of Paxlovid and then utilized that MNPI to trade Pfizer stock options. DAGAR further provided MNPI about the Paxlovid results to BHIWAPURKAR with the intent that BHIWAPURKAR would likewise trade on that information. BHIWAPURKAR, knowing of DAGAR's breach of duty, then also traded Pfizer stock options based on the MNPI, and recommended to another individual ("Individual-1") that Individual-1 trade in Pfizer securities, which Individual-1 did.

2. During in or about 2021, AMIT DAGAR, the defendant, was an employee of Pfizer and assisted in managing the data deliverables in certain clinical drug trials. One of the drug trials DAGAR worked on was for Paxlovid, a medicine designed to treat mild to severe COVID-19 infection. In or about late October and early November 2021, confidential Paxlovid

drug trial database tables were released and made accessible to certain Pfizer employees. The results were highly significant: Paxlovid was found to reduce the risk of hospitalization or death in certain individuals by approximately 89%. On November 4, 2021, Pfizer was preparing to publicize this news, including by drafting a press release to be issued the following day and planning certain regulatory filings.

3.  AMIT DAGAR, the defendant, was formally on the "blinded" side of the Paxlovid drug trial, meaning he was not supposed to have access to certain efficacy information during the pendency of the study. During the course of his employment, however, DAGAR learned information about the results of the relevant study before those results were made public. On or about the morning of November 4, 2021, DAGAR's supervisor ("Witness-1") sent DAGAR an electronic message that indicated, in sum, that Witness-1 had learned the outcome of the drug trial, that the results were positive, and that DAGAR should prepare for some hard work ahead. Later that same day, and while those results remained confidential, DAGAR purchased short-dated, out-of-the-money call options in Pfizer stock.

4.  Approximately two hours after AMIT DAGAR, the defendant, placed his trades, ATUL BHIWAPURKAR, the defendant, who had been close friends with DAGAR since college, also purchased out-of-the-money Pfizer call options, which expired approximately two weeks later. Shortly thereafter, BHIWAPURKAR spoke with Individual-1, and during that call Individual-1 similarly purchased out-of-the-money Pfizer call options, which expired approximately three weeks later.

5.  The next day, on or about November 5, 2023, and before the market opened, Pfizer publicly released results of its Paxlovid study. That same day, following the publication of the positive results, Pfizer's stock price increased substantially, opening—and eventually closing—more than 10% higher than the prior day's closing price. In the coming weeks, each of

2

AMIT DAGAR, the defendant, ATUL BHIWAPURKAR, the defendant, and Individual-1 sold their Pfizer call options at significant profits, totaling approximately more than $350,000. DAGAR spent approximately $8,380 on options for the right to purchase 66,500 shares of Pfizer stock, and ultimately realized gains of approximately $270,000, for a profit of more than 3,000%; BHIWAPURKAR spent approximately $7,426, for the right to purchase 20,000 shares, ultimately realizing gains of approximately $76,000, for a profit of more than 900%; and Individual-1 spent approximately $2,850, for the right to purchase 15,000 shares, ultimately realizing gains of approximately $25,000, for a profit of more than 750%.

## Background

6.  At all times relevant to this Indictment, Pfizer was a publicly traded company headquartered in New York, New York, the shares of which traded on the New York Stock Exchange under the ticker "PFE." Pfizer is a multinational pharmaceutical and biotechnology corporation. In or about 2020 and 2021, Pfizer undertook efforts to develop treatments for the novel coronavirus commonly known as COVID-19. In particular, and among other things, Pfizer developed, began clinical trials on, and ultimately sold for human use the drug Paxlovid, an oral antiviral treatment for COVID-19.

7.  During the relevant period in late 2021, AMIT DAGAR, the defendant, was an employee of Pfizer, working as a senior statistical programming lead. Among other responsibilities, DAGAR assisted in data analysis for certain clinical drug trials, including for Paxlovid. In or about late October and early November 2021, Paxlovid trial database tables were released and made accessible to members of the unblinded study team, who—unlike the blinded team—received access to efficacy results throughout the study. By in or about early November, it was clear that the results were extraordinarily positive; Paxlovid was found to reduce the risk

of hospitalization or death in non-hospitalized high-risk adults with COVID-19 by approximately 89% compared to similarly situated patients given a placebo.

8.  AMIT DAGAR, the defendant, who assisted in managing data deliverables in certain Pfizer drug trials, was formally on the "blinded" side of the Paxlovid trial. However, he nevertheless learned results of the relevant study when they were inadvertently disclosed to his manager, Witness-1, who then informed DAGAR of the developments. Specifically, in or about the morning of November 4, 2021, Witness-1 received an email from a high-level Pfizer employee ("Supervisor-1"), who was several levels above Witness-1's chain of reporting. The email stated, in part:

> Good Morning! Since you are unblinded to the results, I'm reaching out to let you know we met last night with the EBRC [External Benefit Risk Committee] the decision is to file the NDA [New Drug Application] as soon as possible. Please do whatever you can today to start this process including the TLFs [tables listings and figures] for secondary analysis. The press release will be out tomorrow morning.

In this email, "unblinded to the results" was a reference to Pfizer employees who were working on the Paxlovid trials and who had access to data relating to the results of the trial as it was occurring. A New Drug Application, or NDA, is the vehicle through which drug sponsors formally propose that the United States Food and Drug Administration approve a new pharmaceutical for sale and marketing. Tables listings and figures are, in sum and substance, typical formats for the presentation of drug information.

9.  The email from Supervisor-1 conveyed, in sum and substance, that the results of the Paxlovid trials were positive. Indeed, Pfizer would typically apply for an NDA only if the results of the trial were positive, and the decision to file an NDA as soon as possible further indicated that the results were positive, as did the speed of the anticipated press release. In response to the email, Witness-1, who was not in fact on the team unblinded to the results, wrote,

in part: "Great news! I have been the blinded member of the team, but let me reach out to [another Pfizer employee] for guidance with next steps and we will expedite the work on our end." Shortly after receiving the email, Witness-1 also contacted a direct supervisor to address the issue of having received this information despite his status as a member of the blinded team.

10.     Additionally, shortly after receiving the email, and still on or about November 4, 2021, Witness-1 communicated with AMIT DAGAR, the defendant, via electronic chat. Those communications included the following messages at the associated approximate Eastern Times:

| | |
|---|---|
| **Witness-1** (8:50 a.m.): | we got the outcome |
| **Witness-1** (8:51 a.m.): | lag gayee hamari[1] |
| **Dagar** (8:51 a.m.): | oh really |
| **Witness-1** (8:51 a.m.): | lot of work lined up |
| **Dagar** (8:51 a.m.): | yeah . screwed |
| **Witness-1** (8:51 a.m.): | have to find the details |
| **Dagar** (8:52 a.m.): | officially kal pata chalega ?[2] |
| **Witness-1** (8:53 a.m.): | press release tomorrow |
| **Witness-1** (8:54 a.m.): | we may know today |
| **Dagar** (8:54 a.m.): | ok |
| **Witness-1** (8:54 a.m.): | since people will ask for un-blinded results |
| **Dagar** (8:54 a.m.): | yeah |
| **Dagar** (8:54 a.m.): | kind of exciting |

In this exchange, Witness-1 was stating to DAGAR, in sum and substance, that the outcome of the trial was positive and that they were "screwed" because the positive results meant they would have a "lot of work" to do. DAGAR also learned, in sum and substance, that there would be a

---

[1] Based on a draft translation prepared by Federal Bureau of Investigation ("FBI") linguists, this statement translates to, in sum and substance, "we are screwed."

[2] Based on a draft translation prepared by FBI linguists, this statement translates to, in sum and substance, "officially, will find out tomorrow?"

press release the following day, and that the unblinded team might formally or "officially" find out the results that day.

11.     A few minutes later, at approximately 8:57 a.m., another Pfizer employee, who was the unblinded team programming lead for Paxlovid, forwarded an email titled "Supplemental analysis" to both Witness-1 and AMIT DAGAR, the defendant. Included within that communication was another email, from another senior Pfizer employee, that discussed the preparation of the trial results "for submission to regulatory authorities." The content of that email also reflected that the results of the trial were positive.

## The Defendants' Insider Trading

12.     Following the communications described above, still on November 4, 2021, between 1:21 and 1:22 p.m., AMIT DAGAR, the defendant, purchased three sets of out-of-the-money call options for Pfizer stock, expiring the next day, the following week, and in two weeks, respectively.[3] DAGAR spent approximately $8,380 on the positions, which were for the following:

- 200 contracts with a strike price of $44, expiring on November 5, 2021;
- 265 contracts with a strike price of $45.50, expiring on November 12, 2021; and
- 200 contracts with a strike price of $46, expiring on November 19, 2021.

In total, these options contracts gave DAGAR the ability to purchase 66,500 shares of Pfizer stock.

---

[3] Stock options contracts grant their owners the right—but not the obligation—to buy (for a call option) or sell (for a put option) a certain number of shares, at a particular price (the "strike price"), until or upon the expiration date of the contract. A call options contract is defined as "out of the money" if it does not hold intrinsic value—*i.e.*, if exercised, the owner would pay more than the current market value for the stock. Accordingly, in sum and in effect, a purchaser of an out-of-the-money call option is making a bet that the stock will go up in value, exceeding the strike price, therefore allowing the owner of the option contract to realize as profit the increase in value of the stock between the strike price and the market price when the option is exercised.

13.     At approximately 3:40 p.m., on or about November 4, 2021, a little more than two hours after AMIT DAGAR, the defendant, placed his trades, ATUL BHIWAPURKAR, the defendant, placed an order for 200 Pfizer call option contracts—giving him the ability to purchase 20,000 shares—with a strike price of $45, expiring on November 19, 2021.

14.     Just minutes after ATUL BHIWAPURKAR, the defendant, placed his November 4, 2021 order for the Pfizer call option contracts, he exchanged phone and WhatsApp calls with Individual-1, including a WhatsApp call that began at approximately 3:54 p.m. Eastern Time. Approximately four minutes into that call, at approximately 3:58 p.m., two minutes before market close, Individual-1 placed an order for 150 Pfizer call option contracts—giving him the ability to purchase 15,000 shares—with a strike price of $47, expiring on November 26, 2021.

15.     On or about November 4, 2021, the date of all of the above-described trades, Pfizer's stock price ranged from a low of $43.31 per share to a high of $44.47, closing at $43.85.

16.     The following day, on or about November 5, 2021, and prior to market opening, Pfizer announced in a press release the results of the interim analysis of the study showing that Paxlovid reduced the risk of hospitalization or death in certain COVID-19 patients by 89%. The price of Pfizer stock rose significantly during the day, closing more than 10% higher than its previous closing price, and in the following few weeks generally continued to trade significantly higher than its November 4, 2021 closing price.

17.     In an interview with FBI agents on or about January 18, 2023, AMIT DAGAR, the defendant, acknowledged, in sum and substance, and among other things, that he had purchased Pfizer stock options during the relevant time period, knowing that results of the Paxlovid trial were about to be publicly released. DAGAR further stated that he had a hunch that the results were going to be positive.

18. In an interview with FBI agents on or about January 18, 2023, ATUL BHIWAPURKAR, the defendant, acknowledged, in sum and substance, and among other things, that prior to his purchase of Pfizer options, BHIWAPURKAR understood, in sum and substance, that AMIT DAGAR, the defendant, had been working on something very important, that DAGAR's project related to a COVID-19 drug, and that the project was going well and that Pfizer would do well as a result.

19. During the relevant time period, AMIT DAGAR, the defendant, ATUL BHIWAPURKAR, the defendant, and Individual-1 all participated in a joint business venture together that invested in privately-held companies. DAGAR and BHIWAPURKAR were also close friends, as described above, and BHIWAPURKAR and Individual-1 were close friends.

## Statutory Allegations

20. In or about November 2021, in the Southern District of New York and elsewhere, AMIT DAGAR and ATUL BHIWAPURKAR, the defendants, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit offenses against the United States, to wit, (a) securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff and Title 17, Code of Federal Regulations, Section 240.10b-5; and (b) securities fraud, in violation of Title 18, United States Code, Section 1343.

21. It was a part and object of the conspiracy that AMIT DAGAR and ATUL BHIWAPURKAR, the defendants, and others known and unknown, willfully and knowingly, directly and indirectly, by use of a means and instrumentality of interstate commerce and of the mails, and of a facility of a national securities exchange, would and did use and employ, in connection with the purchase and sale of a security, a manipulative and deceptive device and contrivance, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by:

(a) employing a device, scheme, and artifice to defraud; (b) making an untrue statement of a material fact and omitting to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in an act, practice, and course of business which operated and would operate as a fraud and deceit on a person, in violation of Title 15, United States Code, Sections 78j(b) and 78ff.

22. It was further a part and an object of the conspiracy that AMIT DAGAR and ATUL BHIWAPURKAR, the defendants, and others known and unknown, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

### Overt Acts

23. In furtherance of the conspiracy and to effect its illegal objects, the following overt act, among others, were committed in the Southern District of New York and elsewhere: on or about November 4, 2021, ATUL BHIWAPURKAR, the defendant, having been tipped by AMIT DAGAR, the defendant, placed orders to buy a total of approximately 200 call options contracts for Pfizer stock, some of which transactions were with counterparties located in, or transacted through exchanges or servers located in, New York, New York.

(Title 18, United States Code, Section 371.)

## COUNTS TWO THROUGH SIX
### (Securities Fraud)

The Grand Jury further charges:

24.     The allegations contained in paragraphs 1 through 19 and 23 of this Indictment are repeated, realleged, and incorporated as if fully set forth herein.

25.     On or about November 4, 2021, in the Southern District of New York and elsewhere, AMIT DAGAR and ATUL BHIWAPURKAR, the defendants, willfully and knowingly, directly and indirectly, by use of a means and instrumentality of interstate commerce and of the mails, and of a facility of a national securities exchange, used and employed, in connection with the purchase and sale of a security, a manipulative and deceptive device and contrivance, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5 by: (a) employing a device, scheme, and artifice to defraud; (b) making an untrue statement of a material fact and omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in an act, practice, and course of business which operated and would operate as a fraud and deceit on a person, to wit, in knowing violation of duties owed by DAGAR to Pfizer, DAGAR and BHIWAPURKAR used material non-public information obtained from Pfizer to execute and cause and assist others to execute the transactions in Pfizer securities listed below:

| **Count** | **Defendant(s)** | **Transactions** |
|---|---|---|
| 2 | DAGAR | Purchase of 200 Pfizer call option contracts, expiring November 5, 2021, by DAGAR |
| 3 | DAGAR | Purchase of 265 Pfizer call option contracts, expiring November 12, 2021, by DAGAR |
| 4 | DAGAR | Purchase of 200 Pfizer call option contracts, expiring November 19, 2021, by DAGAR |

| | | |
|---|---|---|
| 5 | DAGAR and BHIWAPURKAR | Purchase of 200 Pfizer call option contracts, expiring November 19, 2021, by BHIWAPURKAR |
| 6 | BHIWAPURKAR | Purchase of 150 Pfizer call option contracts, expiring November 26, 2021, by Individual-1 |

(Title 15, United States Code, Sections 78j(b) and 78ff; Title 17, Code of Federal Regulations, Section 240.10b-5; and Title 18, United States Code, Section 2.)

## FORFEITURE ALLEGATION

26. As a result of committing one or more of the offenses alleged in Counts One through Six of this Indictment, AMIT DAGAR and ATUL BHIWAPURKAR, the defendants, shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offenses, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses.

## SUBSTITUTE ASSETS PROVISION

27. If any of the property described above as being subject to forfeiture, as a result of any act or omission of AMIT DAGAR and ATUL BHIWAPURKAR, the defendants:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third person;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), and Title 28, United States Code Section 2461, to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described above.

(Title 18, United States Code, Sections 981; Title 21, United States Code, Section 853; and Title 28, United States Code, Section 2461.)

_____
FOREPERSON
6/28/23

_____
DAMIAN WILLIAMS
United States Attorney