

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

July 19, 2024

**VIA ECF**

The Honorable Andrew L. Carter
United States District Judge
United States Courthouse
40 Foley Street
New York, NY 10007-1312

      Re:    *United States v. Dagar*, 23 Cr. 319 (ALC)

Dear Judge Carter:

      The defendant in the above-captioned case, Amit Dagar, is scheduled to be sentenced on July 26, 2024, for his offenses in this case; namely, committing securities fraud, in the form of insider trading, in stock options of Pfizer, Inc. ("Pfizer") and conspiring to do so. The Government respectfully submits this letter in advance of sentencing and in response to the defendant's presentence submission, dated July 12, 2024 (the "Defense Submission" or "Def. Mem.").

      On November 4, 2021, as the COVID-19 pandemic raged, the defendant learned critical, valuable, confidential information about the status of a drug trial being undertaken by his employer, Pfizer Inc. The defendant was working on the drug trial, in a role that ordinarily would not have provided him access to certain information about it, in order to protect the trial's integrity. But when the defendant inadvertently learned—due to an innocent mistake by another Pfizer employee, followed by the defendant's supervisor revealing confidential information to the defendant—that new results from the drug trial were extremely positive, and that this news was going to be released to the public the very next day, the defendant exploited the error for his own personal gain and in violation of the trust and confidence he owed to Pfizer.

      That afternoon, he abused his position of trust within the company to purchase short-dated, out of the money call options in Pfizer stock. As a result of his insider trading, he made more than a quarter million dollars in illicit gains—a profit of more than 3,000% in just two weeks. Moreover, the defendant tipped a friend so that he, too, could trade on the material, non-public information ("MNPI"), resulting in additional illegal profits of more than $75,000.

      The defendant's conduct was brazen, it violated multiple internal Pfizer policies, and it constituted blatant insider trading, as found by a jury following trial before this Court.

      In the face of this conduct, the defendant argues that notwithstanding the nature and seriousness of the offense, he should be sentenced to a term of probation. For the reasons set forth more fully below, the Government submits that a meaningful term of incarceration would be sufficient but not greater than necessary to satisfy the legitimate purposes of sentencing. Such a

sentence would reflect the nature and seriousness of the offense, would serve the aim of general deterrence, and would avoid creating an unwarranted disparity between Dagar and other defendants in this district who commit insider trading.

## Background and Investigation

### A.   The Offense Conduct

The defendant's conduct in this case was straightforward and significant: he exploited confidential inside information about a drug trial, which he himself was working on, to purchase Pfizer stock options the day before a public announcement of certain trial results. He then tipped a close friend, Atul Bhiwapurkar, with the intent that Bhiwapurkar would also trade on that information, which he did. (*See* Probation Office's Pre-Sentence Investigation Report ("PSR") ¶¶ 9-18.)

During the relevant period, Dagar was an employee of Pfizer and assisted in managing the data deliverables in certain clinical drug trials. One of the drug trials Dagar worked on was for Paxlovid, a medicine treatment for mild to severe COVID-19 infection. In late October and early November 2021, Paxlovid drug trial database tables were released and made accessible to members of the unblinded study team and certain other relevant Pfizer employees. The results were highly significant: Paxlovid was found to reduce the risk of hospitalization or death by nearly 90%. Dagar was formally on the "blinded" side of the drug trial, meaning he was not supposed to be provided efficacy information during the pendency of the study. However, he nevertheless learned material information about results of the relevant study before those results were made public. (PSR ¶¶ 9-11.) Dagar had an obligation and responsibility to keep this information confidential, and especially not to use it for personal financial gain, and he violated that obligation and abused that responsibility to make a profit.

On November 4, 2021, Pfizer was preparing to make public this significant news, including by drafting a press release to be issued the following day, informing certain employees of the drug trial results, and planning next steps for the drug, including certain regulatory filings. That morning, Dagar's supervisor sent Dagar an electronic message that indicated the supervisor had learned the outcome of the drug trial and that the results were positive. Later that same day, Dagar purchased short-dated, out of the money call options, expiring on three dates—the following day, one week later, and two weeks later. Approximately two hours after Dagar placed his trades, Bhiwapurkar, a close friend of Dagar since college, also purchased short-dated, out of the money call options that expired two weeks later.

The next day, November 5, Pfizer publicly released results of the study prior to market open. Following the publication of the positive results, Pfizer's stock increased substantially on November 5, opening (and eventually closing) more than 10% higher than the prior day's closing price. In just days, the defendant realized gains of approximately $270,000, for a profit of more than 3,000%, based on options purchases totaling less than $8,500.

Hon. Andrew L. Carter, Jr.                                                                                                           Page 3
April 19, 2024

    **B.**    **The Charges, Trial, Forfeiture, and the Guidelines Range**

On June 28, 2023, a grand jury in this district returned an indictment charging the defendant in five counts: one count of conspiracy to commit securities fraud, in violation of 18 U.S.C. § 371 (Count One); and four counts of securities fraud, in violation of 15 U.S.C. §§ 78j(b), 78ff; 17 C.F.R. § 240.10b-5 (Counts Two through Five). On December 13, 2023, the grand jury returned a superseding indictment against the defendant (the "Superseding Indictment"), which consolidated the defendant's series of options trades into a single substantive count, charging the defendant with one count of securities fraud, in violation of 15 U.S.C. §§ 78j(b), 78ff; 17 C.F.R. § 240.10b-5 (Count One) and one count of conspiracy to commit securities fraud, in violation of 18 U.S.C. § 371 (Count Two).

The jury trial of the defendant commenced before this Court on January 9, 2024. On January 18, 2024, the jury returned a guilty verdict against the defendant on both Count One and Count Two of the Superseding Indictment.

Pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), the Government seeks forfeiture in the amount of $272,861.99.[1]

As calculated by the Probation Office, and consistent with the Government's letter to the defendant dated December 21, 2023, describing the Government's calculation of the guidelines range (the "Pimentel Letter"), the applicable advisory sentencing guidelines range is 27-33 months of incarceration (the "Guidelines Range").

The Defense Submission makes two objections to the PSR calculation of the Guidelines Range, neither of which has merit.

    1.    <u>The Gain is Correctly Calculated as the Defendant's Profits</u>

It is undisputed that the defendant's profits from his insider trading were approximately $272,000. (*See* PSR ¶ 36; Def. Mem. at 28.) The defendant argues that the amount of his profits overstates the gain amount. This is incorrect. Although the defendant asks the Court to take an exceedingly narrow view of the language of Section 2B1.4(b)(1) of the Guidelines, which refers to "the gain resulting from the offense," he ignores the commentary, which provides the relevant further clarification that for insider trading, the "gain" is "the total increase in value *realized through trading in securities by the defendant*." Background to U.S.S.G. § 2B1.4(b)(1).

The defendant's reliance on *United States v. Rajaratnam*, No. 09 Cr. 1184 (RJH), 2012 WL 362031 (S.D.N.Y. Jan. 31, 2012), is misplaced. In that case, the defendant submitted an expert report including a statistical regression analysis to determine the effect of the public release of the relevant information. Here, there is no argument, or even any indication, that the increase in

---

[1] The defendant argues, without any authority, that the Court should decline to order forfeiture because of the defendant's current financial condition—*i.e.*, because he no longer possesses his ill-gotten gains. *See* Def. Mem. at 58. This argument lacks any basis and should be rejected. *See* 28 U.S.C. § 2461(c) ("If the defendant is convicted of the offense giving rise to the forfeiture, the court *shall order* the forfeiture of the property as part of the sentence" (emphasis added)).

Hon. Andrew L. Carter, Jr. Page 4
April 19, 2024

Pfizer's stock price in just the two weeks following the relevant announcement resulted from anything other than the MNPI at issue here. Accordingly, the Court can reasonably determine that the gain amount is properly calculated as the defendant's gain. Indeed, as the *Rajaratnam* court describes, it relied on the *Mooney* dissent, whereas the *en banc* majority decision concluded, conversely, that "any question about the guideline's meaning is decisively resolved by the authoritative definition provided in the commentary to § 2B1.4," reasoning that "[b]y use of the word realized, the commentary makes clear that gain is the total profit actually made from a defendant's illegal securities transactions." 2012 WL 362031, at *9 (quoting *United States v. Mooney*, 425 F.3d 1093 (8th Cir. 2005)). In insider trading cases, "[s]ince the insider trading defendant stood to—and, presumably, hoped to—benefit from market forces, it is not unjust to refuse to exclude the effect of those same market forces in calculating the gain from his offense." *United States v. Martoma*, 48 F. Supp. 555, 570 (S.D.N.Y. 2014) (in the context of sentencing, declining to reduce the calculated gain amount based on external market forces).

  2. <u>Dagar is Ineligible for a Downward Adjustment for Acceptance of Responsibility</u>

  The defendant's argument that he has clearly demonstrated acceptance of responsibility borders on the frivolous. An adjustment for acceptance of responsibility under Section 3E1.1(a) "is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." Application Note 2 to U.S.S.G. § 3E1.1(a). Here, the defendant put the Government to its burden at trial and denied at least three essential factual elements of guilt: (1) that he traded based on material, non-public information; (2) that, at the time of his trading, he acted knowingly, willfully, and with an intent to defraud; and (3) that he conspired with another person to commit insider trading.

  While in "rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial," this is not one of those rare circumstances. *See* Application Note 2 to U.S.S.G. § 3E1.1(a). One such circumstance is "where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (*e.g.*, to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct)." *Id.* That is not what the defendant did here. In this case, defense counsel argued to the jury that the defendant was factually innocent.

  With respect to the defendant's post-trial statements and conduct, he has done nothing to clearly demonstrate acceptance of responsibility, let alone "admit[] guilt and express[] remorse." *See* Application Note 2 to U.S.S.G. § 3E1.1(a). The defendant refused to even discuss the details of his involvement in his offenses of conviction with Probation (*see* PSR ¶ 32), and in his letter to the Court did not acknowledge that he breached his duty of trust and confidence to Pfizer. While the Defense Submission now also states that the defendant has "demonstrated acceptance of responsibility for his actions in trading in Pfizer securities while he knew information regarding Pfizer that the general public did not know," Def. Mem. at 32, his trial defense included the argument, among others, that the information the defendant knew, that the general public did not, was not material.

  Even now, the defendant's claims in his letter to the Court that he "had not even heard about what insider trading was until the FBI showed up." The Court should flatly reject both the

Hon. Andrew L. Carter, Jr.  Page 5
April 19, 2024

defense argument regarding acceptance of responsibility and the defendant's self-serving statement. Indeed, the defendant's claim is belied by the jury's verdict convicting the defendant of willful violations of the securities laws and also by the evidence at trial showing clearly that the defendant had been trained by his employer *specifically on insider trading*, including with respect to an example *nearly identical* to the facts at issue in this case. As just one example of the extensive proof at trial that the defendant knew he was in possession of non-public information and knew the rules about insider trading—including in circumstances precisely like the ones he found himself in on the day in question—incontestable record evidence showed that during one of the defendant's trainings, he was asked, "Which of the following is an example of insider trading?" and he answered correctly, "Mark advises friends to purchase stock in Pfizer because of a potential drug breakthrough that is not public knowledge." GX 214.

The defendant's current position is far from acknowledging responsibility for committing insider trading and for conspiring to commit insider trading. The defendant may regret getting caught and may regret the consequences he and his family now face for his actions, but that does not constitute acceptance of responsibility.

## Discussion

The Sentencing Guidelines promote the "basic aim" of "ensuring similar sentences for those who have committed similar crimes in similar ways," *United States v. Booker*, 543 U.S. 220, 252 (2005), and so "to secure nationwide consistency, the [Sentencing] Guidelines should be the starting point and the initial benchmark," *Gall v. United States*, 552 U.S. 38, 49 (2007). Along with the Guidelines, the other factors set forth in Title 18, United States Code, Section 3553(a) must be considered. Section 3553(a) directs the Court to impose a sentence "sufficient, but not greater than necessary" to comply with the purposes set forth in paragraph two. That sub-paragraph sets forth the purposes as:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . .

Section 3553(a) further directs the Court to consider: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the statutory purposes noted above; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range as set forth in the Sentencing Guidelines; (5) the Sentencing Guidelines policy statements; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to any victims of the offense. *See* 18 U.S.C. § 3553(a).

### A. The Defendant's Conduct Warrants a Term of Imprisonment

As set forth herein, and for the following reasons, consideration of the relevant factors under 18 U.S.C. § 3553(a) weighs strongly in favor of significant consequences for the defendant.

1. <u>The Nature and Seriousness of the Offense</u>

The defendant's criminal conduct was unquestionably serious. He knowingly traded on confidential, material, inside information, based on information he obtained, and misappropriated, from his employer. And then he went further and tipped a close friend, intending that the friend trade on the same confidential information. The defendant made more than a quarter million dollars in illicit profits, and his friend made tens of thousands more, through cheating the securities market and its participants.

Companies that are owed a duty of trust and confidence must be able to rely on individuals not to violate those duties, and participants in capital markets must be granted the opportunity to engage in trading that is not made unfair by the exploitation of stolen confidential information. Insider trading cheats the system, and it has insidious effects upon entities whose information is illegally stolen and upon individuals who trade not knowing that their transactions are rigged against them.

Such conduct causes serious harm to financial markets. Insider trading of this form "creates [the] perception in the public including, among investors and would be investors, that the market is somehow rigged or, at the very least, that certain individuals who have more access to information have the upper hand in terms of making investment decisions both whether to buy or to sell." *United States v. Collins*, No. 18 Cr. 567 (VSB) (S.D.N.Y. Jan. 17, 2020), Sent. Tr. at 87-88. Insider trading also "appropriate[s] some part of the returns . . . at the expense of other shareholders" and "tends to discourage corporate investment and reduce the economic efficiency of corporate behavior." Michael Manove, *The Harm From Insider Trading and Informed Speculation*, The Quarterly Journal of Economics (Nov. 1989). Because of the economic harm caused by insider trading, and because "[o]ur markets are … such an important part of the fabric of our economic life," it is important to "punish those who would hurt the integrity of that system." *United States v. Wong*, No. 22 Cr. 395 (ER) (S.D.N.Y. Jan. 26, 2024), Sent. Tr. at 24. Moreover, in addition to harming investors and the stock market generally, the defendant further perpetuated his wrongdoing by tipping another individual, compounding the misappropriation of confidential information from the defendant's innocent employer. As Judge Rakoff has described the harm: "This was the functional equivalent of stabbing [the victim company] in the back." *United States v. Gupta*, 904 F. Supp. 2d 349, 354 (S.D.N.Y. 2012). In short, the serious nature of the harm of insider trading, including the insider trading this defendant engaged in, requires punishment.

Here, the defendant both received confidential information and used it to trade for personal gain, and also himself passed on the inside information with the intent that another individual would use it to trade and profit.

2. The Need to Promote Respect for the Law and to Afford Deterrence

The importance of promoting respect for the law, and to afford adequate deterrence, are also significant factors in this case. As an initial matter, as described above, the defendant continues to minimize his criminal intent, including to the Court. It is simply not credible that the defendant "had not even heard about what insider trading was till the FBI showed up," nor is it credibly that he "didn't appreciate the fact that by working on that team I am in possession of non-public information." As the proof showed at trial, November 4, 2020, was the first time the defendant had *ever* purchased Pfizer options—despite being "addicted" to options trading, *see* Def. Mem. at 26, 48, 51. He plainly understood that his job gave him access to confidential information that should not be used to trade on for personal gain. As also described above, he had been specifically trained not only on insider trading generally, but on an example nearly identical to the facts in this case, when he correctly chose a person sharing news of a "potential drug breakthrough" as the answer to the question: "Which of the following is an example of insider trading?" The defendant has no obligation to make a statement to the Court at sentencing, but given his choice to do so, the Court should reject his self-serving statements that are belied by the evidentiary record and the jury's findings of fact. The defendant's explanations and excuses now are inconsistent with the jury's swift and unanimous verdict, and they wrongly minimize his criminal intent at the time of his conduct.

The defendant also plainly understood that he had done something wrong at the time of his trading, as evidenced by his deletion of text messages with Bhiwapurkar in connection with the purchase and sale of the relevant options.

General deterrence similarly requires significant consequences. "[I]nsider trading is an easy crime to commit but a difficult crime to catch," *Gupta*, 904 F. Supp. 2d at 355, and in order to ensure others similarly situated to the defendant do not come to think that it is "a game worth playing," *United States v. Goffer*, 721 F.3d 113, 132 (2d Cir. 2013), sentences must send the message that "when you get caught, you will go to jail," *Gupta*, 904 F. Supp. 2d at 355.

Research shows that enforcement actions and punishment for insider trading is effective for achieving deterrence. *See, e.g.*, Fernan Restrepo, *The Impact of Insider Trading Doctrine on the Incidence of Insider Trading: An Analysis of the Effect of the Misappropriation Theory* (Nov. 8, 2023), https://ssrn.com/abstract=4627327 (finding that the adoption of the misappropriation theory of insider trading had a meaningful deterrent effect); Robert Davidson and Christo Pirinsky, *The Deterrent Effect of Insider Trading Enforcement Actions*, Accounting Review (May 2021) (concluding that insider trading convictions have a statistically significant effect on deterrence of future insider trading).

In sum, deterrence is a significant factor for sentencing in this case. Without meaningful consequences attached to insider trading, particularly given the facts and circumstances of this case, the relative simplicity of committing the crime and the challenge of detecting it would incentivize those similarly situated to the defendant to engage in similar conduct. Indeed, the circumstances of the defendant's insider trading illustrate the difficulty of detecting the crime and the importance of having a strong deterrent counterweight.

Hon. Andrew L. Carter, Jr. Page 8
April 19, 2024

### 3. Additional Section 3553(a) Factors

The Government acknowledges, and is not unsympathetic to, the defendant's personal circumstances, as described in the letters submitted in support of the defendant by friends and family, including the fact that the defendant is the primary caregiver for his young child. *See generally* Def. Mem. at 6-21, Ex. C. Those are appropriate and valid considerations for the Court at sentencing, as are the defendant's contributions to his family and community. Similarly, the defendant plainly has significant support from his friends and family, as demonstrated by the many of letters submitted to support him at sentencing. The Government also acknowledges that this is the defendant's first conviction, and that his offense was of a limited duration.

Additionally, the Government notes and acknowledges the circumstances of the defendant's immigration status, which cause significant and unusual differences between this defendant and many other otherwise-similarly-situated defendants. *See id.* at 42-46. The Government's position with respect to this defendant is limited to these particular facts and circumstances, including especially those immigration factors.

Ultimately, all of these factors must be weighed along with the defendant's conduct, which involved the betrayal of his employer, the criminal involvement of his friend through tipping, and the cheating of the financial system and of other investors in the market, as well as with the need to promote respect for the law and both general and specific deterrence.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

by: _____
Alex Rossmiller
Justin V. Rodriguez
Assistant United States Attorney
(212) 637-2415

Cc:   *Counsel for the defendant* (via ECF)